UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAROUK SYSTEMS, INC. | § | |
| | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. 4:10-mc-00300 |
| | § | |
| EYOU INTERNATIONAL TRADING | § | |
| COMPANY, LTD.; FUZHOU HENQJU | § | [FILED UNDER SEAL PURSUANT |
| TRADE CO. LTD.; EBRANDSALE | § | TO 15 U.S.C. § 1116] |
| TRADE CO. LTD.; EBAGI TRADING CO. | § | |
| LTD.; HANGZHOU DREAM CLOUDS | § | |
| GARMENT STORE; et al. | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF SCOTT GELIN IN SUPPORT OF THE PLAINTIFF'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER,
DOMAIN NAME TRANSFER ORDER, ASSET RESTRAINING ORDER, EXPEDITED
DISCOVERY ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY
INJUNCTION**

I, SCOTT GELIN, under penalty of perjury, declares and says:

  1. I am an attorney licensed to practice law in the State of New York and before the bars of the Southern and Eastern Districts of New York. I am a shareholder in the law firm of Greenberg Traurig, LLP ("GT") and counsel to Plaintiff FAROUK SYSTEMS, INC. ("Farouk" or "Plaintiff").

  2. I submit this declaration in support of Plaintiff's *ex parte* Application for a Temporary Restraining Order, Seizure Order, Domain Name Transfer Order, Order Restraining the Transfer of Assets, Order Sealing the File, Order for Expedited Discovery and Order to Show Cause for Preliminary Injunction (the "Application") against EYOU INTERNATIONAL TRADING COMPANY, LTD.; FUZHOU HENQJU TRADE CO. LTD.; EBRANDSALE

NY 240,440,495v2

TRADE CO. LTD.; EBAGI TRADING CO. LTD.; HANGZHOU DREAM CLOUDS GARMENT STORE; *et al.* (collectively, "Defendants").

3. If called as a witness, I could testify to the following upon personal knowledge and/or upon my review of GT's files on this matter.

4. Farouk actively pursues those who sell counterfeit version of its successful CHI hair styling irons, hair dryers and other goods ("CHI Products") on the Internet. On behalf of Farouk, GT directs an outside investigative firm to provide various online business-to-business sellers and auction websites such as eBay.com, iOffer.com and Alibaba.com with daily or near-daily "notices of claimed infringement" ("NOCI") asking these sites to remove listings for counterfeit CHI Products ("Counterfeit CHI Products") and/or to revoke the accounts of those third-parties who sell Counterfeit CHI Products on these sites. In 2009, outside investigators sent approximately three thousand (3,000) NOCI's to Alibaba.com on Farouk's behalf putting Alibaba.com on notice of specific offers of sale of Counterfeit CHI Products. Of the Defendants named in this Action, investigators have sent Alibaba.com approximately two hundred and seventy-one (271) NOCI's regarding nine (9) different Defendants' sales of Counterfeit CHI Products. While Alibaba.com may have removed particular listings for Counterfeit CHI Products, these Defendants simply relisted their products and their sales of Counterfeit CHI Products have continued unabated. As of today, all nine of these Defendants continue to sell Counterfeit CHI Products on Alibaba.com.

5. Based on my experience pursuing sellers of Counterfeit CHI Products on Farouk's behalf, it is very typical for us to discover that U.S.-based sellers of Counterfeit CHI Products we catch selling on eBay.com, Amazon.com or other online selling platforms to have

NY 240,440,495v2

purchased these counterfeit products from a wholesale supplier they found on business-to-business websites, such as Alibaba.com or Tradekey.com.

6. By way of example, we learned that a seller of Counterfeit CHI Products we caught on eBay.com in June 2010 had purchased the Counterfeit CHI Products he was selling from Defendant Mywayhair Co., Ltd. whom he had found on Tradekey.com.

7. In June 2009, GT retained the services of Hong Kong-based private investigators to investigate Defendant, EYOU International Trading Co., Ltd. ("EYOU") who is offering to sell and selling Counterfeit CHI Products on Tradekey.com as well as the stand-alone web site www.eyoutrade.com, pictured below, and elsewhere.



The investigation revealed that no company was registered in China to do business under the name EYOU International Trading Co. Ltd., and that the address listed by EYOU, No. 599 JingJin Road, Fengze Area, Quanzhou City, Fujian China, was nonexistent. EYOU's selling page on Tradekey.com bears the "trust seal," and shows that EYOU has been a GoldKey

3

NY 240,440,495v2

member since 2008, and in that time has earned "4,100 TrustProfile points." When Farouk's investigators purchased a "brand new in the box CHI digital flat iron" from EYOU, a Counterfeit CHI Product arrived in a package with a return address listing an entirely different company, Zone Home Trading Co. Ltd., at an entirely different address. EYOU's selling page on Tradekey.com refers customers to its stand-alone website located at www.eyoutrade.com, while the publicly-available domain name registration information for this domain name reveals that its registrant is yet another entity, Cinda Trading Co., Ltd, at an entirely different address from the other two listed above.

8. Courts in numerous Circuits, including this Court, have granted the same *ex parte* relief requested herein to brand owners, including Farouk, which include the restraint of counterfeit products and assets, having multi-district effect. The following are examples of such seizure orders:

> *Farouk Systems, Inc. v. Zoonda Supply, et al.*, 4:08 CV 1872 (VDG)(S.D. Tex. Jun. 12, 2008); *Animale Group, Inc. v. Sunny's Perfume, Inc.*, 5:07 CV 13 (MA)(S.D. Tex. February 9, 2007); *Farouk Systems, Inc. v. Princess Silk, LLC., et al.*, SACV07-1190 JVS (MLGx) (C.D. Cal. October 2007); *The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, 10 CV 1630 (AKH)(S.D.N.Y. Mar. 2, 2010); *Antik Denim LLC v. Da Urban Hut et al.*, 05 CV 10077 (JFK) (S.D.N.Y. Dec. 12, 2005); *The North Face Apparel Corp. v. TC Fashions, Inc.*, 05 CV 9082 (S.D.N.Y. Oct. 25, 2005); *The North Face Apparel Corp. v. Reliance Dep't Store, Inc.*, 03 CV 9596 (BSJ) (S.D.N.Y. Dec. 3, 2003); *Cartier Int'l B.V. v. Sam Liu*, 02 CV 7926, 2003 WL 1900852 (S.D.N.Y. Apr. 17, 2003); *Fila U.S.A., Inc. v. Top Luxor Trading*, 98 CV 5187 (C.D. Cal. June 29, 1998); *Reebok Int'l Ltd. v. McLaughlin*, 89 CV 1739-T (S.D. Cal. Nov. 27, 1989); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521 (S.D. Cal. 1990); *Fila USA, Inc. v. Eidai Int'l*, 93-00837 (D. Haw. Oct. 29, 1995); *Reebok Int'l Ltd. v. Fairgulf Int'l Shipping & Trading, U.S.A., Inc.*, 93 CV 391(W.D. Tex. Sept. 28, 1993); *Cartier Int'l v. Gorski*, 301 CV 1948 (PCD) (D. Conn. Oct. 17, 2001).

4

Copies of these orders are annexed hereto as **Exhibit A**. Under an extremely similar set of facts, the United States District Court for the Southern District of New York granted the same *ex parte* relief requested herein in this Application to plaintiffs The North Face Apparel Corp. and PRL USA Holdings, Inc. *See The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil Action No. 10-Civ-1630 (AKH). In that case, a network of anonymous sellers, primarily based in China, was selling counterfeit Polo and The North Face apparel through a large number of online stores. The Honorable Alvin K. Hellerstein granted an *ex parte* Temporary Restraining Order, Seizure Order, Domain Name Transfer Order, Order Restraining the Transfer of Assets, Order Sealing the File, Order for Expedited Discovery and Order to Show Cause for Preliminary Injunction, ordering PayPal and other financial institutions to restrain defendants' assets and produce all documents regarding the defendants and their accounts. The Court also ordered that the domain names that defendants were using to sell counterfeits be disabled by their service providers, and that defendant-owned domain names incorporating plaintiffs' trademarks be transferred to a registrar of the plaintiffs' choosing. *See* **Exhibit A**.

9. Due to the Defendants' utilization of false and incomplete contact information to avoid detection, Plaintiff would be unable to serve Defendants by traditional means.

10. To provide service via email, Plaintiff proposes to use an online service, RPost (www.rpost.com), that provides valid proof of authorship, content (e-mail body and attachments), delivery and official time sent and received. A white paper regarding this technology and its use is annexed hereto as **Exhibit B**.

11. In compliance with § 1116(d)(4)(B)(ii) of the Lanham Act, Plaintiff has not published or publicized the seizure requested herein.

NY 240,440,495v2

12. As required by § 1116(d)(4)(B)(ii) of the Lanham Act, Plaintiff has advised the United States Attorney's Office for the Southern District of Texas of Plaintiff's intention to seek a seizure order against Defendants from this Court. A copy of Plaintiff's letter to José Angel Moreno, Esq., U.S. Attorney for the Southern District of Texas is annexed hereto as **Exhibit C**.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of July, 2010 in New York, NY.

_____
SCOTT GELIN

NY 240,440,495v2